Good morning. May it please the court, counsels, my name is Howard Abrams and I represent the appellants Patricia Delgado individually and his mother Kelly Delgado that I will refer to as the plaintiffs moving forward. We're here today on appellants appeal on two issues. First was the granting of a summary judgment motion back on December 22, 2009 and the second issue up on appeal is the denial of plaintiff's motion for leave to file a second amended complaint that was presented before Judge Maris on December 27, 2009. Defendants in this matter of the appellate filed a motion for summary judgment more or less stating that there was no negligence on behalf of the Village of Tinley Park that owed the library where the elevator in question was located. It was plaintiff's contention that this was a non-delegable duty and that they breached this duty by failing to maintain it or inspect that elevator which was approximate cause of the injury. The facts which don't seem to be in question in this case is that on June 13, 2008, Patricia Delgado and her daughter went into the library and got into an elevator. It's a two-floor library and pressed the button. As the elevator went up, according to Ms. Delgado, it reached the second floor where the doors didn't open. At that point, the description given by Ms. Delgado was that the elevator began to shake. Doors never opened. She felt it drop what she believed to be to the first floor and then finally raise up to the second floor. And it was during this dropping that they were knocked around in the elevator and sustained injury. It was plaintiff's contention that the elevator malfunctioned in some fashion. And the defendants produced a list of witnesses, including William Brennan, who went out there three days later to look at the elevator and they all seemed to pass the elevator. Nobody could really determine what, if anything, was wrong with the elevator. It seemed to be... Didn't the plaintiff allege that there was certain things that the library, and I'm just talking about the library now because the elevator operators, I think they settled out there. Correct. So didn't the plaintiff allege there were certain things that the library either did or didn't do that caused this accident and the library then presented their expert testimony that said the accident could not have happened the way the plaintiff contends. Let me finish. Go ahead. So doesn't the plaintiff then have to present her own expert to countermand that? I don't think so, Your Honor. Why not? I don't think Illinois requires that you produce an expert just because the defendant produces an expert that says this accident could not happen in the way described by the plaintiffs. And part of the contention, what was being argued during summary judgment, is this term freefall. The plaintiffs never used the term freefall. It was a lawyer term being used and being presented to this expert witness who went out there two and a half years later and saying it is impossible for this accident to have occurred in the way the plaintiffs described. Well, actually it wasn't because he said it couldn't have occurred in that way. Now he described it would be catastrophic in that way. So it wasn't impossible for it to happen. He was just saying that these things would have to be evident at the time. And this expert went out there, I believe it was two to three years later. And, in fact, the other question becomes, is the person who investigated the incident three days later and there was a question of fact there within the record, and that was William Brennan, is that it's not even clear that he looked at the right elevator. I mean, there were two elevators here, one a service elevator, one a passenger elevator. And he, during his deposition testimony, stated that he looked at a service elevator. And it was clear from Ms. Delgado's testimony and the way the elevator runs that this service elevator required a key card and patrons would not have been using that elevator. So the first look at this elevator might have been two and a half years later. And I don't see anywhere in part of the reason for appeal under Illinois case law that says you have to produce an expert testimony. I think there's a failure to inspect. And through the deposition testimony of Ms. Who had said that? I'm sorry. You're in a summary judgment situation. The defendant comes in with two or three people who render an opinion strengthening their, showing their defense. Then the burden falls upon you to come up with some fact issues, either by expert or by the circumstances of the situation. What did you set up as a question of fact to justify the court denying their motion? The question of fact is that both, all these people produced all gave circumstances. They said that elevator valves leak all the time. Now, that it wasn't a catastrophic leak and it would cause a free, not a free fall, would cause a fall. One witness testified that it could drop 10 to 15 feet if there's a power failure or syndrome. Now, there was varying rates of speed and distance. And that was my point is that they all seemed to admit that there are situations where elevators malfunction and things happen, not catastrophic. And let's be clear here. Plaintiffs never claimed this was a catastrophic elevator malfunction. You're not answering my question. What questions of fact did you set up to rebuff the defendant's motion? The question of fact is... You're just saying, well, they shouldn't have believed them. That's what, is that a... Well, that's part of it, yes. Well, tell me what facts, what situations were set up by you to defeat this judgment? Well, there's a question of fact. They have a duty to maintain and inspect it. They didn't even inspect the elevator afterwards to see if there were any problems. Three days later they inspect an elevator and there's a question of fact that they even looked at the right elevator. But that was after the accident occurred. I mean, what does that have to do with whether or not the elevator was inspected before the accident occurred? Because I think they produced evidence to show that they had a regular maintenance schedule and this elevator was inspected regularly once a month and, you know, every six months they had to certify whatever it was and all of that. So prior to the accident there was evidence from the defendants that they maintained a regular routine schedule of maintenance. There was... Is that right? Yes, there was a routine schedule of evidence and there were certain slips they just said to pass. And then there was a statewide inspection, I believe about two weeks beforehand, sometime in May, end of May beforehand. And during that deposition a question of fact was created because he had a checklist where he said he would be checking the hydraulic fluid and those were unchecked and he said it was carbon copy, he would think it would be checked on the main copy. So there were questions of fact that while it was inspected, if it was inspected properly two weeks beforehand. Counsel, can I ask, you're looking at your complaint. Yes, Your Honor. You state that there is a duty to, or that they violate their duty to operate, manage, maintain, and control without negligence. Now, specifically, what facts do you have from your side of the case that would counteract what the testimony or the deposition testimony was of the witnesses for the defendant? Well, again, it goes to they had this routine inspection that just says pass, but they were very, there were a question of facts created about what they look at. A lot of them just said they did an eye test and when we asked about the hydraulic pistons or valves, I believe they were called to, where the leaking could occur. And in fact, after the accident, in November sometimes, they did find some packets leaking and these would cause certain drop levels in an elevator. So why were these things noticed afterwards but weren't noticed before and all you had beforehand in inspection was just saying pass on a little small ticket sheet, no real detail, and the guy couldn't really explain what exactly he had to do during the inspection. He said he wasn't even trained by Elite Elevators, the maintenance company they contracted with, about what their routine inspection was. He said it's kind of a universal standard. So again, I think those create questions of fact. Counsel, do you have a motion to amend your complaint? Yes, we do. Is it in the record? I supplemented it, I did, Your Honor. Yes. So it has been provided? Yes. Why wasn't a residence of count initially filed? Why at the stroke of midnight do you finally come in with that? That's a good question. You've got an elevator case here and from my experience, any law firm worth their salt on an elevator case is going to have a residence of count. We didn't file residence of count at first and maybe it was hindsight at the time is that one, we thought there was enough there to prove a private fashion case. Two, with an elevator service company, we weren't sure about the control issue and if we had looked into it deeper, I mean, there's not a good reason to say why we didn't file it, it's just we didn't think that it was necessarily at that point and even Judge Maris during summary judgment sort of alluded to the fact that maybe this case needs to take a different direction and it was why it was done at the midnight hour is that we believe the case was a negligence case. We had at the time of summary judgment, it was still the service company and the property owner in the case and we weren't really sure about the control issue, which is necessary for residence of count, but upon further review, we realized that, yes, I believe that the stronger case to be made here is racist and that led me to my second point on appeal. You weren't sure about the control issue? I mean, this is a building that's owned by the village of Tinley Park, it's operated by the library? The best answer is an oversight at the time. I mean, there's no good reason for it. I'm not saying that there, I can't give you a good answer or the right answer why it wasn't pled at the earlier stages until, you know, the summary judgment hearing when it seemed that that was the only logical outcome at that point. And I believe that's what the second amended complaint would cure and I think that that's why we did file a second amended complaint alleging racist and I don't think that it should have been denied at that point just because it was the late hour. The racist account wasn't going to change anything in the case. I mean, it's not really a new theory, there weren't going to be new witnesses, it would cure the defective pleading. I don't see any prejudice to the defendants, the same witnesses would be used, the same testimony would be used. Well, it is somewhat of a new theory, counsel. Correct. But it doesn't really change anything in terms of the discovery process. There wasn't going to be something brand new. They still had their expert who was going to say it didn't happen. They still had all these witnesses that they say did a sufficient enough job to maintain and inspect. But, I mean, elevators don't do what the plaintiffs said they do unless there's some per se negligence and the control issue is that. That's why we wondered, like, why are we arguing about a res ipsa count way after the fact? What you just said is, you know, textbook definition of res ipsa. So why it wasn't in your initial pleadings is really a mystery. But anyway, go ahead. Okay. And so, I mean, I think that if the court uses the Loyola factors that allowing us to amend the complaint does cure all this and that the case should be able to move forward against the village of Tinley Park. Counsel, let me ask you about that. It's argued that the Hartsog case is a case that sets up a different standard for amending a complaint after a motion for summary judgment is granted. Do you want to make that argument? What is your argument? My argument is that the Hartsog case takes a much stricter approach and that the Supreme Court of Illinois hasn't adopted it. And, in fact, the Hartsog case in itself does go to a Loyola standard and uses that standard really in their basis for the now. I think the Hartsog case makes an indication that maybe there should be a movement in that direction on this sort of situation. But that has not been made law in Illinois. And I don't think that it is applicable to this situation. I think you have to use the Loyola factors. And I think Hartsog did that as well while making mention to the fact that maybe a more defined standard should be used when the case is being ultimately decided on a summary judgment and leave to amend. And that's what I think they were indicating there without making that the law. And how much time was there after discovery was closed that you asked for leave to amend? Discovery had been closed, let's see, the summary judgment was in December, probably about six months prior on experts. And, in fact, discovery had been closed before that in terms of parties. I'm not exactly sure on that date. But it had been closed for a while. We were coming up on a January 3rd or 4th trial date at that point. It was about nine days, I believe, was in the brief prior to trial that the motion was filed. But the last factor, I guess one that they would say, I mean, I think it's the timely relates back, previous opportunities. Yes, there were previous opportunities. But even the Loyola case, it was after a summary judgment, it was two months after a summary judgment that the plaintiff sought leave to amend their complaint. And the court still granted saying that that was their first opportunity to amend. The court didn't really go into an analysis of why they didn't consider it early on in the pleadings. And so that was the standard that I was using, is that after the summary judgment at an appropriate time, it was a weekend, a couple of days, we filed our motion and sought leave to amend to cure the defective pleadings. Thank you. Thank you. I assume you're going to save a few minutes. Two minutes. Good morning. Rebecca Fozo. I'm representing the Tinley Park Library along with my partner, John Yambert. I think one of the first issues that plaintiff touched upon was that the only evidence plaintiff provides in this case is a description of how the accident occurs. They don't have anything to get them to causation. That was pointed out in our summary judgment brief. And that is the reason Judge Meares granted our summary judgment motion. Again, it's explained in our appellate brief. In our brief, we talk about we had two mechanics from the elevator inspection or two mechanics from the repair company, an elevator inspector and a building maintenance person from Tinley Park Library that looked at this elevator. They testified that the mechanics had looked at the elevator, had a regular routine maintenance schedule. Nothing was found. There were no complaints of this type of incident occurring before the plaintiff complained. Counsel, I think unless you are asserting that the incident never occurred, something happened. I mean, the plaintiff immediately after the occurrence did speak to a couple of the librarians. There was an incident report. So I think everybody agrees that something happened. I think what you disagree on is what happened. Is that a fair statement? Or are you saying nothing happened and she just made the whole thing up? No, that's fair, Your Honor. Something definitely happened, according to the plaintiffs. And like I said, they provide a description of what happened. But there doesn't seem to be any testimony that the library failed to maintain, repair or inspect this elevator. All the evidence is to the contrary. And the elevator was inspected on May 21st, 08. Which is bringing us to their second issue. You know, this is a good segue into that. Something happened. I think we can all agree that something happened. And since this is an elevator, and I think there's a lot of case law that talks about an elevator being a common carrier. And normally elevators just don't drop from one floor to another unless somebody was negligent. Isn't that the definition of res ipsa? Your Honor, it is. But what we were faced with was an ordinary negligence complaint. That's what plaintiffs alleged. That's what the complaint said. Well, I'm taking you to your second issue. To his second issue. Why shouldn't he be allowed to amend his complaint to allege a res ipsa count? Well, Judge, I think under the standard, under the Loyola standards, as plaintiff's counsel was explaining, I don't think amending the complaint to add a res ipsa count would cure the defect. Why not? We have two, there were two defendants in the case at the time. We had the library and we had the repair company. The plaintiff needs to show that there was exclusive control. They can't do that. The other reason I don't think it cures the defect is they still need to show that the library had notice of a danger or there were facts and circumstances that a danger probably exists. They have nobody to testify about that. They have to show that in a res ipsa case of this kind where the elevator just suddenly falls. You know, just think of it hypothetically. Airplane cases are frequently res ipsa cases. And you don't have to have a crash before the crash to assume that something's going to happen. So why is this different? Well, Judge, I think this is different is because based on all the facts and evidence in this case, there did not appear to be a defect with the elevator. It was inspected. It passed the inspection. We had a maintenance person come out. The Monday following this accident happened on Friday night. They came on Monday. But doesn't that go to the heart of what res ipsa addresses where in situations such as this, we can assume that but for some negligence an elevator just doesn't suddenly plummet from one floor to another. I mean, I think that's, as I understand it, that's a classic definition of what would fall within the parameters of a res ipsa matter. Judge, I don't think they show that the library was negligent in any way. There's no evidence showing that we failed to do anything with this elevator. There's no evidence showing there was any kind of defect with this elevator. Well, counsel, can I ask you, when you keep mentioning defect, are we getting into the strict liability language? I mean, for the most part, negligence is duty, breach, causation, damages. So defect, are you using strict liability standard here? That there was something wrong with the elevator. They don't show that there was a problem with the elevator. I believe they still need to show that. Well, they have to show there was a duty, right? Breach, causation, damages. That's it for negligence. But those cases that you cite, though, Balthus and Henry, weren't they strict liability cases as far as the financing? The Balthus case actually was initially a strict liability and a negligence case. However, the strict liability count was dismissed as written opinion is only on the negligence portion of the case. What about Henry? Henry is a products liability case, but it applies Balthus. While we're in this area, what about the Weldon and Massachusetts Appellate case? I mean, are you claiming we need to have plaintiff needs to produce an expert in these kind of cases? Judge, I think in our particular case, yes, an expert's needed because there is nobody to testify about causation in this particular case. And in the Weldon and as well as the Rosenberg case that the plaintiff relies upon, those cases say that there needs to be a judicial evaluation to determine why their expert testimony is needed. And here Judge Meris decided it was necessary. If there's no evidence of a defect, such as in the Weldon case, there needs to be some sort of evidence that the library failed to do something. Ms. Folso, may I ask, can you tell me how your defendants, your clients would have been prejudiced had the trial court granted leave to file an amended complaint based upon recidivism? Absolutely. Contrary to what the plaintiff's counsel was just saying, if we were to raise Ipsicom Carrier case, this case would have taken a completely different path. There would have been an issue of exclusive control that we would have needed. Well, control. The elevators in the library, it's their elevator. Okay. You already had all of your experts lined up. They were, whatever they said in their depositions, defending the negligence action would have been very appropriate in defending the recidivism. So tell me how you would have been prejudiced had the court allowed the case to go to trial on recidivism? Actually, the maintenance folks, yes, their testimony would have been very similar. However, we adopted our co-defendant's expert, Elite Elevator. We would have gotten our own expert in this particular case because we would have been held to a different standard of care if we were a common carrier. We would have been held to an elevated standard of care. Elite, as a repair company, would have been held to an ordinary negligence standard of care. Also, Elite, we filed no counter complaints against Elite. If we were adverse to Elite, we certainly would have done that. All of your experts had already said under oath, there's nothing wrong. We can't find anything. There was nothing wrong with this elevator. That's your recidivism defense. There's nothing wrong. It's hydraulic. We would have expected to see a pool of hydraulic oil on the floor. It was bone dry. Same defense. Obviously, we too would have prepared a different motion for summary judgment. Our motion was brought on just a negligence theory that was alleged in the plaintiff's complaint. This would have been brought as a motion for summary judgment to dismiss the race Ipsicom and carrier accounts. Also, I'd like to note that the plaintiff never sought leave to amend. Discovery had been closed for six and a half months. They had our motion for summary judgment for two months. They decided to amend nine days before trial after Judge Maris had made her ruling. There were plenty of opportunities to amend. We were left nine days before trial with a completely new theory. Counsel, can I ask you on that issue? As far as the cases, the Herzog case versus Loyola, do you claim that Herzog sets a stricter standard and does not follow Loyola? Herzog does set forth a stricter standard. It uses the standard for a motion to reconsider. However, I know that Herzog does apply the Loyola factors. I think under either Herzog or Loyola, the plaintiff should not have been given leave to amend their complaint and add these theories. Doesn't Herzog use a language, it would seem the standard would be more restrictive? It doesn't actually have that in the whole thing. Correct. It does say it. It seems that the standard would be more restrictive, but they do apply the Loyola factors in the end. Anything else, Counselor? Thank you very much. Just briefly, Your Honor, and I'd only like to address the race-IPSA matter in rebuttal, not the motion for summary judgment, is that the Baltus case I think is very distinguishable, whether or not I would need an expert for a race-IPSA account, is number one, that was, yes, it was negligence, but it was negligent manufacturer design was the claim there. And you also had a situation where this was a power tool that was bought by a consumer and it was 12 years later, there was damage to it, there had been things done to the product by the plaintiff in that case where it was a very different set of facts and circumstances, and just because it was negligence, it's a very different circumstance than an elevator case, and I don't think it applies where they are saying that in that kind of situation with negligent design and manufacture, I would agree you would need an expert, but that's not what we're alleging here, and that plaintiff's case is more like that Rosenberg case out in New Jersey where it was race-IPSA, it was an elevator, and the court there did reference airplane situations where jurors can understand this, elevators are supposed to go up to a floor, open the doors, and you step out or go down to a floor and you step out and get down. If they shake or they drop or something, that shouldn't happen and an expert testimony isn't required for that. So I think that when you apply that and you take a look at that Rosenberg case out in New Jersey, that is completely factually on point to the situation plaintiff is alleging and wanting to amend their complaint to allege race-IPSA. Back to the issue of prejudice, your opponent makes the point that had they known that this was going to metamorphose into a race-IPSA case, they would have prepared their defense completely differently, they would have used different experts, they may have filed a different motion for summary judgment, would certainly have taken a different turn, and this was, in fact, pretty much on the eve of trial, and so they were placed in an untenable position. I mean, that's the argument. Well, to be fair, Your Honor, my answer to you is, number one, we were only asking for motion for leave to amend a complaint. They were going to have an opportunity, if Judge Maris granted it, to answer or otherwise plead, and they could have sought leave to address those issues if they thought there was a pleading issue or a summary judgment issue. That's the point of other witnesses. As the Honorable Harris mentioned, what other testimony was going to come out? All you're supposed to do, if race-IPSA is alleged, it doesn't change the burden, but you're supposed to tell us, you know, what did you do or why didn't this happen? Why weren't they negligent? And that's what the expert's testimony was, was saying this couldn't happen, barring a catastrophic event where tons of oil leaked out, and that testimony was already there. How are they going to, you know, prepare for the defense of, you know, maintaining, inspecting? Well, they have all that testimony, that they go out there twice a year with a state inspector, that they do monthly checkups, that if there's an incident on such and such date, they do it. I mean, all that testimony was there. I don't see what new theories, not new theories, but what new evidence they would need, what other preparation they would need to defend the race-IPSA count. I don't think it really changes anything besides what you would be arguing to a jury about what the negligence standard is. That's all that's really changing. The witnesses and the testimony is still going to be the same. It would set the case back a little bit, though, because if you're ready for trial and suddenly you have a completely new theory, I think that, as you yourself pointed out, wouldn't they need to ask for some time to prepare a response to that theory that had not been raised before and maybe get some new experts themselves and that kind of thing? So, I mean, in that regard, wouldn't it change the entire schedule of when they would expect this case to come to some kind of conclusion? I think at the most a little. I don't really think there would be need for any additional experts, maybe some additional time. We're talking maybe a month at the most I would see to prepare for trial. I don't think you need the extra time, but I'm not going to tell a judge or a counsel what they can or cannot do to say that would be different than what was already presented in the testimony. Anything else? Thank you. Thank you. This matter will be taken under advisement.